FARMERS BANK OF WOODLAND MILLS v. J. T. VINSON, and W. L. WILLIAMS, Administrators.

Western Section. November 15, 1928.

Petition for Certiorari denied by Supreme Court, February 9, 1929.

Pierce & Fray, of Union, City, for appellant.

J. A. Whipple, of Union City, for appellee.

OWEN, J. The Farmers Bank of Woodland Mills filed a bill of interpleader in the chancery court of Obion county. Said bank alleged that it had issued two certificates of deposit bearing four per cent (4 %) interest in the sum of $4153 to J. R. Williams during his lifetime. The defendant, W. L. Williams had qualified as administrator of J. R. Williams estate in the State of Missouri where J. R. Williams had died. J. T. Vinson had qualified as administrator of the estate of J. R. Williams in Obion county. The complainant bank also alleged that it had in its possession two promissory notes payable to J. R. Williams aggregating $1650, which

notes had been left with complainant bank for safe-keeping. The bill alleged that both administrators were claiming the assets held by said bank. J. R. Williams left a sister and a number of nephews and nieces in Obion county and W. L. Williams, defendant, was a nephew living in the State of Missouri, these were J. R. Williams' next of kin. The said J. R. Williams owed debts both in Tennessee and Missouri. Both administrators filed answers and each one insisted that he was entitled to all the funds held by said bank. The bank paid the amount due from it into the chancery court and also tendered the two notes it held for safe-keeping. The Chancellor held and decreed that the Tennessee administrator, Vinson, was entitled to the funds. Williams, the Missouri administrator was denied any relief, he prayed, perfected an appeal to this court and has assigned two errors, both errors raise the one proposition which is as follows:

> "The court was in error in failing to hold that W. L. Williams, the Missouri administrator was entitled to the possession of the $1000 deposit slip or promissory note, and the $3153 deposit slips, and the two notes of $150, and of $1500, due by W. H. Williams and Dow Williams respectively."

In support of this assignment of error, appellant relies upon the following propositions of law:

> "In other instances it is held that the situs of a debt follows the creditor, and, where the debtor and creditor resides in different states the law of the domicile of the creditor prevails." (5 R. C. L., 930).

In the case of Grundy County v. Tennessee, etc., Co., our Supreme Court, discussing the question as to the situs of personal property says:—

> "It is a general rule, recognized not only in this but other States, and in United States Courts, that the situs of tangible personal property, such as choses in action, notes, accounts, etc., for the purpose of taxation in absence of any statute fixing a different situs, is at the domicile of the owner." 94 Tenn., 317.

In the case of Mayor et al. of Gallatin v. Alexander, our Supreme Court says:—

> "It is settled, we believe, by a uniform course of decision, probably without exception in England or America, that for purposes of taxation, all movable properties and choses in action belonging to a non-resident of a State, which are not so located in another State as to form a part of its proper wealth, have no other situs than the domicile of their owner. 78 Tenn., 477.

> "Shares of stock being personalty, and taxable in the county where the stock is, the question in respect of stocks owned by

a person, is, where is the stock? At the place of the owner, or at the place of the Bank? Undoubtedly for the purpose of taxation at the place of the owner. The rule is, that personal property follows the person of the owner." 5 Coldwell, 603.

In reply to these propositions counsel for the Tennessee administrator insists that:

J. R. Williams having died intestate in Missouri leaving money on time deposit and notes for safe-keeping in the Farmers Bank, Woodland Mills, Obion county, Tennessee, it was proper for J. T. Vinson by selection of the next of kin to qualify as administrator of said estate in the county court of Obion county, Tennessee.

"Letters testamentary or of administration may be granted upon the estate of a person who resided, at the time of his death, in some other State or territory of the union or in a foreign country, by the county court of any county in this State; (1) Where deceased had any goods, chattels, or assets, or any estate, real or personal, at the time of his death or wherever the same may be when said letters are applied for." Shan. Code, Sec. 3935.

In Young, Administrator v. O'Neil, 3 Sneed, page 55, our Supreme Court said:

"The general doctrine as established both in England and America is, that an executor or administrator appointed in one State or country is not, by virtue of such appointment, entitled to sue, nor is he liable to be sued, in his official capacity, in any other State or country. His title and authority are restricted to the territorial limits of the State or government granting to him letters testamentary or letters of administration. If there be assets in a foreign country which he desires to reduce to his possession, he must obtain letters of administration, and give security according to the law of that country, before he can assert any right to or receive the same."

It is further insisted that W. L. Williams, administrator, appointed in Missouri, not having obtained letters of administration in Tennessee and not having given any bond, he had no right to receive the notes held by the complainant bank and no right to recover on the certificates of deposit.

It is the general rule that administration granted in one State gives authority to collect assets in that State only and not in other States or countries. 2 Humph., 224; 9 Humph., 337; 3 Sneed, 55; 7 Heisk., 84; 1 Baxt., 137; 9 Baxt., 334; 7 Lea, 236; 15 Lea, 98 and 16 Pick., 184.

Again on the other branch of this case it is contended that the certificates of deposit came into the hands of the foreign administrator and therefore since he had reduced them to possession, that it vested him with title, since they were negotiable.

If they had been negotiable paper, the foreign administrator might have assigned them to some one else, but in no case in the State of Tennessee, has it been held that a foreign administrator can sue or be sued in this State, or where there are local creditors and next of kin, can he remove said estate to another State to be established.

In the case of St. John v. Hodge, 9th Bax., 341, the Supreme Court of his State speaking along this line said:

"It should be further observed, that whilst the residence of the debtor in this State does not necessarily draw to its jurisdiction the control of the negotiable paper not actually here, yet our laws do not permit a foreign administrator, as such, to sue in our courts; and if administration here is necessary, we will make the debts assets for the benefit of domestic creditors, and not allow them to be removed without payment of our own creditors, if there be such."

And further it is not the duty of a foreign administrator to collect assets beyond his jurisdiction, and it not being his duty he is not liable for a failure in such collections.

"And as an executor or administrator had no power or authority to sue or collect the assets of which the deceased may have died possessed in a foreign country, the law does not impose on him the duty of doing so. The grant of letters of administration in one country gives authority to collect assets of the deceased only in that country, and does not extend to the collection of assets in a foreign country." 9 Hum. 331-2.

In Petersen v. Chemical Bank, 32 N. Y., 88 Am. Dec., 298 the court said:

"It is clear, in the first place that neither an executor nor an administrator, appointed in a foreign political jurisdiction, can maintain a suit in his own name in our courts. It is not because the executor or administrator has no right to the assets of the deceased existing in another country, for his title to such assets, though conferred by law of the domicile of the deceased, is recognized everywhere. Reason of form to protect the rights of creditors and other residents of the jurisdiction in which the assets are found, have led to disability of foreign executors and administrators, which disability, however inconsistent with principle, is firmly established."

In Ellis v. Insurance Company, 16 Pickle, page 177, our Supreme Court said:

"In conclusion, we wish to say that we fully recognize the principle so well settled that a foreign executor or administrator or receiver cannot collect assets, or sue or be sued in his representative capacity in this State, but we think this ques-

tion is entirely eliminated from the case by the agreed decree, by which the Alabama administrator is made a party defendant and allowed to set up claim to the policies.''

In the instant case the Missouri administrator was made a party defendant but there was no agreement that he be allowed to set up his claim to the certificates. The Missouri administrator is asking for affirmative relief when he asks that the funds in complainant bank be paid over to him.

We are of the opinion that a foreign administrator has no right to recover Tennessee assets. The defendant, Williams, should have qualified as administrator in Tennessee, but, this he refused to do. We are of the opinion that the funds in the chancery court of Obion county should be paid over to the Tennessee administrator and the lower court so held there is no error in the decree, the assignments of error are overruled and the judgment of the lower court is affirmed. The cause will be remanded to the chancery court of Obion county for the purpose of paying out the funds in said court to the Tennessee administrator.

The appellant will pay the costs of the appeal, the costs of the lower court will be paid as decreed by the Chancellor.

Heiskell and Senter, JJ., concur.